UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:24-cr-00055-SEB-MJD |
| | ) | |
| ROBERT REED, | ) | -01 |
| | ) | |
| Defendant. | ) | |

**ORDER DENYING DEFENDANT'S MOTION TO RECONSIDER**

This matter is before the Court on Defendant Robert Reed's ("Mr. Reed") Motion to Reconsider the May 21, 2025, denial of his motion to suppress the evidence derived from his warrantless arrest. Dkt. 69. For the reasons discussed below, that motion is **DENIED**.

**I.   Background**

Because our May 21st Order provides a detailed recitation of the underlying facts, dkt. 66, we proceed below with an abbreviated summary.

On Friday, February 16, 2024, shortly after midnight, Mr. Reed was driving along rural county roads, attempting to locate the nearest on-ramp to the interstate. The recent construction of several new roadway roundabouts in the area, coupled with Mr. Reed's general unfamiliarity with the locale and his inexperience using his cell phone GPS, rendered Mr. Reed's navigational efforts unavailing. Mr. Reed's unusual driving behaviors, which included stopping in traffic lanes, alerted on-duty Hancock County Sheriff's Deputy Joshua Cochard ("Deputy Cochard"), who proceeded to follow Mr. Reed for further observation, without activating his lights or sirens.

1

Shortly thereafter, Mr. Reed spotted Deputy Cochard's fully marked police vehicle as it was parked in a nearby intersection, at which point Mr. Reed stopped, exited his vehicle, and approached the officer to ask for directions. During the ensuing conversation, Deputy Cochard reportedly smelled the odor of an alcoholic beverage on Mr. Reed's breath and noticed that Mr. Reed displayed an unsteady balance and glassy and pinpoint eyes. Believing that Mr. Reed's circuitous driving pattern and physical demeanor evidenced signs of possible intoxication, Deputy Cochard administered three standardized field sobriety tests—the Horizontal Gaze Nystagmus test (the "HGN test"), the "walk and turn" test, and the "one leg stand" test—each of which Mr. Reed failed. Mr. Reed declined a portable breathalyzer test as well as a blood draw, leading Deputy Cochard to place Mr. Reed under arrest. A subsequent toxicology report reflected Mr. Reed's blood alcohol concentration of 0.01 g/100 mL and the presence of amphetamines and methamphetamines. Dkt. 47-2 at 1–2.

Meanwhile, an inventory search of Mr. Reed's vehicle revealed a loaded semiautomatic handgun stored in the center console. Mr. Reed is charged in the Indictment with one count of Unlawful Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1).

On January 27, 2025, Mr. Reed moved to suppress all evidence derived from his warrantless arrest and the subsequent search of his vehicle. Dkt. 46. Mr. Reed maintains that he did not exhibit sufficient signs of intoxication or impairment such that Deputy Cochard's finding of probable cause was reasonable. Specifically, Mr. Reed challenged Deputy Cochard's conclusion that he had failed the HGN test. To support this argument, Mr.

Reed cited the relatively low concentration of alcohol in his blood[1] (which, he contended, would have been insufficient to trigger nystagmus) as well as the general noncorrelation between amphetamine consumption and nystagmus.[2] In Mr. Reed's words, the toxicology results rendered Deputy Cochard's nystagmus observations "scientifically improbable" and less worthy of credence. Mr. Reed also asserted that the body worn camera footage, which captured his performance on the field sobriety tests, contradicted Deputy Cochard's testimony about his balance and demeanor.

On April 14, 2025, the Court held an evidentiary hearing, during which both Deputy Cochard and Mr. Reed testified. On April 23, 2025, Mr. Reed filed a post-hearing memorandum in support of his motion to suppress. Dkt. 60. On May 21, 2025, we denied Mr. Reed's motion to suppress, concluding that the Government had met its burden of showing, by the preponderance of the evidence, that probable cause existed for Mr. Reed's arrest. We reasoned, in pertinent part, as follows:

> The relevant facts and circumstances known to Deputy Cochard at the time of Mr. Reed's arrest included Deputy Cochard's observations that, at approximately 1:30 in the morning, in an isolated area of the county, Mr. Reed had displayed several unusual driving behaviors, such as bringing his car to a complete stop in a traffic lane, conducting a U-turn soon after a law enforcement vehicle began following him, and stopping his car at multiple roundabouts despite the lack of other vehicular traffic; that Mr. Reed's breath smelled of alcohol; that Mr. Reed had glassy and pinpoint eyes and slurred

---

[1] Mr. Reed maintains, and the Government does not dispute, that nystagmus typically becomes noticeable when a person's blood alcohol concentration reaches approximately 0.06. National Traffic Law Center, *Horizontal Gaze Nystagmus: The Science and the Law: A Resource Guide for Judges, Prosecutors and Law Enforcement* 17 n.26 (1999).

[2] Mr. Reed maintains, and the Government does not refute, that no scientific correlation has been identified between amphetamine consumption and nystagmus. Nystagmus among suspected amphetamine impaired drivers. Journal of Forensic & Legal Medicine. Volume 95, April 2023. https://doi.org/10.1016/j.jflm.2023.102502.

> speech; and that Mr. Reed's performance on each field sobriety test yielded clues of intoxication.

Dkt. 66 at 8.

In accounting for the relevant circumstances known to Deputy Cochard at the time of Mr. Reed's arrest, we found Mr. Reed's countervailing arguments unpersuasive. First, we rejected Mr. Reed's theory that the toxicology results rendered Deputy Cochard's reported observations of nystagmus "scientifically improbable," as there was not a sufficient evidentiary basis from which we could justifiably discredit Deputy Cochard's testimony to the contrary. Dkt. 66 at 10 (quoting dkt. 60 at 2). We noted, for instance, that the amount of time between Mr. Reed's arrest and his subsequent blood draw had not been made known to us. *Id.* (citing *Missouri v. McNeely*, 569 U.S. 141, 152 (2013) (for probable cause purposes, accepting that, "because an individual's alcohol level gradually declines soon after he stops drinking, a significant delay in testing will negatively affect the probative value of the [test] results")).

Relatedly, we found that the noncorrelation between nystagmus and central nervous system ("CNS") stimulants, such as amphetamines and methamphetamines, did not contravene Deputy Cochard's observations of nystagmus, as "there [wa]s no record evidence nor any expert opinion illuminating how the contemporaneous consumption of both a central nervous system depressant, such as alcohol, and stimulants, such as amphetamines, might affect observable signs of nystagmus." *Id.* Likewise, we had not "been presented with evidence detailing whether, how, or to what extent the quantity of amphetamines found in Mr. Reed's system might have impacted his own nystagmus or Deputy Cochard's

4

ability to detect it." *Id.* at 10–11. Lastly, we found that the body worn camera footage corroborated, rather than undermined, Deputy Cochard's testimony.

On June 20, 2025, Mr. Reed moved for reconsideration of the denial of his motion to suppress. Dkt. 69. The Government has filed no response, and the time for doing so has now passed. Thus, Mr. Reed's motion is ripe for ruling.

**II.     Legal Standard**

Although the Rules of Criminal Procedure do not expressly provide for "motions to reconsider (in district courts)," they are nevertheless regarded as "ordinary elements of federal practice that exist in criminal prosecutions . . . ." *United States v. Rollins*, 607 F.3d 500, 502 (7th Cir. 2010) ("The Justices have concluded that motions to reconsider in criminal prosecutions are proper and will be treated just like motions in civil suits.") (citing *United States v. Healy*, 376 U.S. 75 (1964)). "[A]s a matter of general practice[,] a motion to reconsider in a criminal prosecution is proper and may be entertained if it is filed in time." *United States v. Beard*, 745 F.3d 288, 291 (7th Cir. 2014) (citation omitted).

Motions for reconsideration are not entertained lightly. "A district court may reconsider a prior decision when there has been a significant change in the law or facts since the parties presented the issue to the court, when the court misunderstands a party's arguments, or when the court overreaches by deciding an issue not properly before it." *United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008) (internal citation omitted). "Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996).

### III.     Analysis

Mr. Reed requests that we reconsider our denial of his motion to suppress because we "based part of [our] legal analysis on [the] misapprehension that 'the time between Deputy Cochard's reported observation of nystagmus and Mr. Reed's eventual blood draw remains unknown to us.' " Dkt. 69 at 1 (quoting dkt. 66 at 10). Mr. Reed now cites specific portions of the probable cause affidavit showing that approximately two hours elapsed between the time that Deputy Cochard observed Mr. Reed operating a motor vehicle (at 1:38 a.m.) and the time that Mr. Reed's blood was drawn (at 3:36 a.m.). *Id.* Because blood alcohol concentration drops at an average hourly rate of 0.015 g/100 mL, *see* American Prosecutors Research Institute, *Alcohol Toxicology for Prosecutors: Targeting Hardcore Impaired Drivers* (2003), Mr. Reed reasons that his own blood alcohol concentration "at the time Deputy Cochard reportedly observed nystagmus was necessarily well below the level [of 0.06 g/100 mL,] at which nystagmus" typically becomes observable. *Id.* (citing dkt. 66 at 9). Continuing, Mr. Reed maintains that the noncorrelation between nystagmus and the consumption of CNS stimulants demonstrates that Deputy Cochard lacked probable cause to arrest Mr. Reed for operating a motor vehicle while intoxicated.

As we noted in our May 21st Order, a warrantless arrest, such Mr. Reed's arrest here, must be supported by probable cause in order to comport with the protections provided by the Fourth Amendment to the United States Constitution. *Virginia v. Moore*, 553 U.S. 164, 176–77 (2008). "Officers have probable cause to arrest when the facts and circumstances known to them 'reasonably support a belief that the individual has committed, is

6

committing, or is about to commit a crime.' " *United States v. Davis*, 119 F.4th 500, 505 (7th Cir. 2024) (quoting *Doe v. Gray*, 75 F.4th 710, 718 (7th Cir. 2023)).

In assessing probable cause, we must take care "not to dissect every fact in isolation but to look at the totality of the circumstances—the whole picture." *Jump v. Vill. of Shorewood*, 42 F.4th 782, 789 (7th Cir. 2022) (citing *District of Columbia v. Wesby*, 583 U.S. 48, 60–61 (2018)). Additionally, "the probable cause test is an *ex ante* test, so the discovery of subsequent information that was unknown to [the arresting officer] at the time of the arrest does not speak to whether he had probable cause to [effectuate the] arrest." *Braun v. Vill. of Palestine*, 56 F.4th 542, 550 (7th Cir. 2022) (citation modified). Likewise, "[i]f there is probable cause to believe that a person has committed a crime, it is constitutionally irrelevant whether the officer arrested to person on charges for which there was no probable cause." *Tapley v. Chambers*, 840 F.3d 370, 377–78 (7th Cir. 2016).

After carefully reviewing the record, we hold that reconsideration of our order denying Mr. Reed's motion to suppress is unwarranted. As noted above, "[r]econsideration is not an appropriate forum for rehashing previously rejected arguments." *Caisse Nationale de Credit Agricole*, 90 F.3d at 1270. We, therefore, need not revisit Mr. Reed's assertion regarding the general noncorrelation between amphetamine consumption and nystagmus. To the extent that the Court "misunderst[ood]" Mr. Reed's argument, *Ligas*, 549 F.3d at 501, by overlooking evidence of the two-hour duration between the time of Mr. Reed's observed nystagmus and his blood draw—evidence not previously cited or otherwise specifically relied upon by Mr. Reed when his motion to suppress pended—our conclusion remains that the facts and circumstances known to Deputy Cochard at the time of Mr.

Reed's arrest support a finding of probable cause. *See United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) ("In our adversarial system of adjudication, we follow the principle of party presentation," meaning that we "rely on the parties to frame the issues for decision . . . ."); *United States v. Boyle*, 484 F.3d 943, 946 (7th Cir. 2007) (noting that courts do not consider undeveloped arguments).

That said, even if we accepted Mr. Reed's extrapolations and assumed that he displayed no observable signs of nystagmus, "the fact that an individual is able to complete one or more field sobriety tests successfully . . . does not negate probable cause when other circumstances give rise to a reasonable belief that the individual is intoxicated." *Seiser v. City of Chicago*, 762 F.3d 647, 656 (7th Cir. 2014). Here, the factual record before us provides ample support for Deputy Cochard's belief that Mr. Reed was intoxicated. Those circumstances include as follows: that, well after midnight in a rural area of the county, Mr. Reed had displayed several unusual driving behaviors, such as bringing his car to a complete stop in a traffic lane, conducting a U-turn soon after a law enforcement vehicle began to follow him, and stopping his car at multiple roundabouts despite the lack of other vehicular traffic; that Mr. Reed's breath smelled of alcohol; that Mr. Reed had glassy and pinpoint eyes and slurred speech; and that Mr. Reed's performance on the field sobriety tests yielded clues of intoxication. Dkt. 66 at 8. Thus, the fact that Mr. Reed's blood alcohol concentration (as illuminated by the two-hour time lapse) fell within a legally permissible range does not, as a matter of law, render Deputy Cochard's finding of probable cause unreasonable or unsubstantiated. *See Braun*, 56 F.4th at 550.

IV.  Conclusion

For the foregoing reasons, Mr. Reed's Motion to Reconsider is hereby **DENIED**. Dkt. 69. This case shall proceed accordingly.

IT IS SO ORDERED.

Date:   7/24/2025

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Harold Samuel Ansell
INDIANA FEDERAL COMMUNITY DEFENDERS
Sam_Ansell@fd.org

Barry D. Glickman
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
barry.glickman@usdoj.gov