UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:24-cr-00055-SEB-MJD |
| | ) | |
| ROBERT REED, | ) -01 | |
| | ) | |
| Defendant. | ) | |

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

On April 3, 2024, a grand jury indicted Defendant Robert Reed ("Mr. Reed") for the unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Dkt. 15. Now before the Court is Mr. Reed's Motion to Dismiss, pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B), where, in a facial and as-applied challenge to the statute, he asserts that § 922(g)(1) violates the Second Amendment. Dkt. 79. For the reasons stated below, his motion is **DENIED**.

**LEGAL STANDARD**

Under Federal Rule of Criminal Procedure 12(b), a "party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). In evaluating motions to dismiss a criminal indictment, we accept the Government's factual allegations as true and "must view all facts in the light most favorable" to the Government. *United States v. Yashar*, 166 F.3d 873, 880 (7th Cir. 1999). Pursuant to Rule 12(b), we properly resolve legal challenges concerning the constitutionality and interpretation of federal law. *See United States v. Coscia*, 866 F.3d 782, 790

1

(7th Cir. 2017); *United States v. Sorich*, 523 F.3d 702, 706 (7th Cir. 2008); *see also United States v. Gates*, No. 1:22-CR-00397-1, 2023 WL 5748362 (N.D. Ill. Sept. 6, 2023) (construing defendant's "legal challenge to the felon-dispossession statute" as asserting that "the charge fails to state an offense under Criminal Rule 12(b)(3)(B)(v), because the statute violates the Second Amendment").

## BACKGROUND

We assume the parties' familiarity with the facts and circumstances underlying the Indictment, as they have been detailed in two prior orders. Dkt. 66, 70. We proceed below with an abbreviated summary, supplementing only insofar as is relevant to the instant motion.

On February 16, 2024, Mr. Reed was arrested without a warrant for operating a motor vehicle while intoxicated. A subsequent search of Mr. Reed's vehicle revealed a loaded semiautomatic handgun stored in the center console, leading to the present Indictment, filed on April 3, 2024, wherein Mr. Reed is charged with one count of Unlawful Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1).

According to the Indictment, Mr. Reed's criminal history includes the following felony convictions:

- Conspiracy to Possess with Intent to Distribute and/or Distribute Heroin, under cause number 1:12-cr-00133-023 (S.D. Ind. May 30, 2014) (guilty plea and sentencing);

- Kidnapping, under cause number 49G01-9611-CF-181461 (Marion Cnty. Sup. Ct. Feb. 13, 1998);

- Possession of Cocaine, under cause number 49G20-9610-CF-157688 (Marion Cnty. Sup. Ct. Apr. 4, 1997); and

- Theft, under cause number 41D02-9607-DF-00099 (Johnson Cnty. Sup. Ct. Dec. 10, 1997).

Dkt. 15.

On January 27, 2025, Mr. Reed moved to suppress the evidence resulting from his warrantless arrest, including the firearm found in the center consol of his vehicle. On May 21, 2025, following an evidentiary hearing, we denied Mr. Reed's motion to suppress, concluding that Mr. Reed's arrest was supported by probable cause, and, as such, the subsequent search of his vehicle was permissible under the Fourth Amendment. Dkt. 66 at 11 (citing *United States v. Davis*, 119 F.4th 500, 505 (7th Cir. 2024)). Mr. Reed timely moved for reconsideration on June 20, 2025, which motion was denied on July 24, 2025. Dkt. 69, 70.

On September 30, 2025, Mr. Reed's new counsel moved to dismiss the Indictment, pursuant to Federal Rule of Criminal Procedure 12(b)(3), arguing that the charge under § 922(g)(1) violates the Second Amendment to the United States Constitution facially and as applied to Mr. Reed. Dkt. 79, 80. The Government responded in opposition on October 1, 2025, and Mr. Reed filed a reply brief on October 16, 2025. Dkt. 81. Mr. Reed's Motion to Dismiss is thus fully briefed and ripe for ruling.

## DISCUSSION

Mr. Reed challenges § 922(g)(1) on the grounds that it violates the Second Amendment to the United States Constitution both facially and as applied to him. The Second

Amendment provides that a "well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The United States Supreme Court has "held that the right to keep and bear arms is among the 'fundamental rights necessary to our system of ordered liberty.' " *United States v. Rahimi*, 602 U.S. 680, 690 (2024) (quoting *McDonald v. Chicago*, 561 U.S. 742, 778 (2010)). As "codified in the Second Amendment, the right secures for Americans a means of self-defense." *Id.* (citing *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 17 (2022)).

"Like most rights, though, the right secured by the Second Amendment is not unlimited." *Id.* at 690–91 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)) (citation modified). "From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever for whatever purpose." *Heller*, 554 U.S. at 626.

According to the Supreme Court's directives, the Second Amendment analysis proceeds as follows: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24. To "delineate the contours of the right" to keep and bear arms, district courts must "examine our 'historical tradition of firearm regulation . . . .' " *Rahimi*, 602 U.S. at 691 (quoting *Bruen*, 597 U.S. at 17). "[I]f a challenged regulation fits within that tradition, it is lawful under the Second Amendment." *Id.* "[W]hen the Government regulates arms-bearing conduct, . . . it bears the burden to 'justify its regulation.' " *Id.* (quoting *Bruen*, 597 U.S. at 17). "[T]he appropriate analysis involves

considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." *Id.* at 692 (citation modified). "Why and how the regulation burdens the right are central to this inquiry." *Id.* (citation modified). "[W]hen a challenged regulation does not precisely match its historical precursors, it may still be analogous enough to pass constitutional muster." *Id.* (citation modified).

With these principles in mind, we turn to Mr. Reed's facial and as-applied challenges to § 922(g)(1).

**I.  Facial Challenge**

The statute prohibiting possession of a firearm by a convicted felon provides, in pertinent part, as follows:

> It shall be unlawful for any person . . . who has been convicted in any court, of a crime punishable by imprisonment for a term exceeding one year . . . [to] possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1).

Mr. Reed argues that § 922(g)(1) is facially unconstitutional because it imposes "a complete ban on all firearm possession, with no limitation on type or use," in violation of the Second Amendment's protections for possessing and carrying firearms for purposes of self-defense. Dkt. 80 at 5. Mr. Reed asserts that "the People," as that term is used in the text of the Second Amendment, refers to "all Americans," meaning that the categorical disarmament of all felons, as codified in § 922(g)(1), is incompatible with the Second Amendment as well as our nation's history and tradition of firearm regulation. *Id.* at 5–6. Mr. Reed traces pre-Founding English history to demonstrate that English regulations dispossessed

5

particularized classes, such as those with "the intent to cause terror in others," of their firearms; and that England utilized sureties, rather than wholesale disarmament, to deter prospective firearm misuse by dangerous people. Dkt. 80 at 9–11. Mr. Reed contends that "[t]here is little evidence of an early American practice of forever barring all people convicted of a felony from ever again possessing a firearm" (though American colonies did restrict gun ownership by religious minorities, Native Americans, and enslaves persons). *Id.* at 12–16. Continuing, Mr. Reed argues that nineteenth century history shows that "attempts to disarm a class of offenders [has been] rejected as inconsistent with the right to bear arms." *Id.* at 17. Furthermore, Mr. Reed asserts that the "two oft-cited American practices—(1) execution of felons and (2) a desire for a virtuous citizenry—" are not "relevantly similar" to § 922(g)(1) such that the Government can establish a historical tradition of disarming felons. *Id.* at 21.

    In its response, the Government maintains felons are not traditionally understood to be among "the People" protected by the Second Amendment. Rather, the Government contends, the country has long imposed legal disabilities on convicted felons, including disallowing felons from voting, serving on juries, and holding elected office. At the time of the Founding, the Government continues, nonviolent offenses were often met with harsh penalties, such as death and/or forfeiture of all personal property. As such, the public at that time would not "have understood someone facing death and estate forfeiture to be within the scope of those entitled to possess arms." *Id.* at 7 (quoting *Medina v. Whitaker*, 913 F.3d 152, 158 (D.C. Cir. 2019)). Thus, the Government argues, § 922(g)(1) is facially

constitutional, as it aligns with this country's history and tradition of disarming individuals found to have committed crimes or to present dangers to public safety. *Id.* at 5.

To prevail on his facial challenge, Mr. Reed must "establish that no set of circumstances exists under which the [law] would be valid." *Rahimi*, 602 U.S. at 693 (quoting *United States v. Solerno*, 481 U.S. 739, 745 (1987)). To defeat Mr. Reed's facial challenge, "the Government need only demonstrate that [§ 922(g)(1)] is constitutional in some of its applications." *Id.*

Throughout the development of its Second Amendment jurisprudence, the Supreme Court has consistently described prohibitions on the possession of firearms by felons as "presumptively lawful." *Id.* at 699 (quoting *Heller*, 554 U.S. at 626–27 & n.26); *accord McDonald*, 561 U.S. at 786 ("We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons . . . .' We repeat those assurances here.") (quoting *Heller*, 554 U.S. at 626–27). Likewise, the Seventh Circuit has recently rejected the argument that "the Second Amendment permits persons with felony convictions to possess both firearms and ammunition" as "hard to square" with the Supreme Court's dicta in *Heller* and *McDonald*. *United States v. Gay*, 98 F.4th 843, 846 (7th Cir. 2024). That said, neither the Supreme Court nor the Seventh Circuit has yet conclusively determined whether § 922(g)(1) is facially constitutional.

In the Supreme Court's 2024 decision in *United States v. Rahimi*, the Court upheld the constitutionality of § 922(g)(8), which prohibits individuals subject to domestic violence restraining orders from possessing a firearm where such individuals have been found

7

to pose "a credible threat to the physical safety" of an intimate partner or child. 18 U.S.C. § 922(g)(8). In rejecting the facial challenge to § 922(g)(8), the Supreme Court concluded that our country's "tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others." *Rahimi*, 602 U.S. at 700.

Two "distinct legal regimes" of firearm regulations from the 1700s and early 1800s buttress the Supreme Court's conclusion, *id.* at 694–95: First, surety laws, which "authorized magistrates to require individuals suspected of future misbehavior to post a bond" and potentially face forfeiture of the bond if misbehavior ensued, *id.* at 695; and, second, "going armed" laws, which punished the use of dangerous weapons "to terrify the good people of the land" with "forfeiture of the arms and imprisonment." *Id.* at 697 (citation modified). "Taken together, the surety and going armed laws confirm what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Id.* at 698. Although § 922(g)(8) "is by no means identical to these founding era regimes, . . . [i]ts prohibition on the possession of firearms by those found by a court to present a threat to others fits neatly within the tradition that surety and going armed laws represent." *Id.*

Relying on the Supreme Court's holding in *Rahimi*, a number of courts in our Circuit (and beyond) have concluded that § 922(g)(1) comports with our nation's history and tradition of prohibiting dangerous people from possessing firearms. *E.g.*, *United States v. Ashley*, No. 1:24-CR-00002-JPH-MKK, 2024 WL 4653361, at *3 (S.D. Ind. Nov. 1, 2024) rejecting facial and as-applied challenge to § 922(g)(1)); *United States v. Williams*, 113

8

F.4th 637, 657 (6th Cir. 2024) (concluding that "our nation's history and tradition demonstrate that Congress may disarm individuals they believe are dangerous"); *United States v. Bullock*, 123 F.4th 183, 185 (5th Cir. 2024), *cert. denied*, No. 25-5208, 2025 WL 2824426 (U.S. Oct. 6, 2025); *United States v. Jackson*, 110 F.4th 1120, 1125 (8th Cir. 2024). We join these courts in holding that § 922(g)(1) is constitutional when applied to felons "found to pose a credible threat to the physical safety of others." *Rahimi*, 602 U.S. at 700. Because § 922(g)(1) "is constitutional in some of its applications," Mr. Reed's facial challenge necessarily fails. *Rahimi*, 602 U.S. at 693.

Mr. Reed also contends that § 922(g)(1) is facially unconstitutional because there is no historical support for permanently, rather than temporarily, disarming felons. *See* dkt. 80 at 12–18; *see also Range v. Attorney General*, 124 F.4th 218, 231 (3d Cir. 2024) ("*Range II*") (describing § 922(g)(1) as a "de facto lifetime disarmament for all felonies"). In *Rahimi*, the Supreme Court noted approvingly that, "like surety bonds of limited duration," § 922(g)(8)'s "restriction was temporary" in that it "only prohibits firearm possession so long as the defendant 'is' subject to a restraining order." 602 U.S. at 699; *see also id.* at 713 (Gorsuch, J., concurring) ("We do not resolve whether the government may disarm an individual permanently.").

Contrary to Mr. Reed's arguments, however, federal law does provide various avenues through which convicted felons may regain their right to possess a firearm. For example, under § 921(a)(20), "[a]ny conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter . . . ." 18 U.S.C § 921(a)(20). Relatedly, the

9

Government also asserts that the Attorney General has recently revitalized a preexisting statutory "pathway for individual defendants to remove firearm-possession impediments in light of their particular circumstances." Dkt. 81 at 10 n.2 (citing *Granting of Relief; Federal Firearms Privileges*, 90 Fed. Reg. 17835 (Apr. 18, 2025), https://www.federalregister.gov/documents/2025/04/29/2025-07317/granting-of-relief-federalfirearms-privileges). More specifically, § 925 permits a person dispossessed of his firearms to petition the Attorney General to lift the firearm restriction. The Attorney General is authorized to "grant such relief if it is established to h[er] satisfaction that the circumstances regarding the disability, and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest." 18 U.S.C. § 925(c). In light of the possibility that a person may regain his right to bear arms, we reject Mr. Reed's argument that § 922(g)(1) is facially unconstitutional due to its permanent duration.

In sum, we find that § 922(g)(1) is facially constitutional because "the Second Amendment permits the disarmament of individuals who pose a credible threat to the physical safety of others." *Rahimi*, 602 U.S. at 693.

**II.     As Applied to Mr. Reed**

Mr. Reed contends that § 922(g)(1) is unconstitutional as applied to him because his "predicate felony convictions do not suggest that he is particularly 'dangerous,' or otherwise subject to firearm restrictions like those targeted at the founding." Dkt. 80 at 25. The Government, by contrast, maintains that Mr. Reed's extensive criminal history demonstrates that Mr. Reed may be constitutionally disarmed under § 922(g)(1). Dkt. 81 at 14.

10

Although "[t]he Justices have yet to consider the question whether non-violent offenders may wage as-applied challenges to § 922(g)(1)," the Seventh Circuit has "assume[d] for the sake of argument that there is some room for as-applied challenges . . . ." *Gay*, 98 F.4th at 846 (emphasis omitted); *see also Atkinson v. Garland*, 70 F.4th 1018, 1021–23 (7th Cir. 2023) (remanding § 922(g)(1) challenge for further historical analysis where petitioner had "maintain[ed] an otherwise clean record for 24 years" following a 1998 guilty plea to felony mail fraud); *Range II*, 124 F.4th at 231–32 (holding that the government failed to establish the constitutionality of 922(g)(1) as applied to petitioner whose sole disqualifying offense was a decades-old misdemeanor conviction for food-stamp fraud). In assessing an as-applied challenge to § 922(g)(1), the Seventh Circuit has focused on whether the defendant "fit[s] th[e] description" of a "law-abiding, responsible citizen[ ]" who has a constitutional right to possess firearms. *Gay*, 98 F.4th at 846 (quoting *Bruen*, 597 U.S. at 26).

Here, Mr. Reed's criminal history notably includes, *inter alia*, numerous juvenile adjudications as well as felony convictions for theft, possession of cocaine, kidnapping, and conspiracy to possess with intent to distribute and/or distribute heroin. Dkt. 81 at 12–13; *e.g.*, dkt. 14 at 3–9. In addition to multiple probation violations, Mr. Reed's record also reflects that he was on supervised release at the time of his arrest in this case. Dkt. 81 at 13. Considering the seriousness of Mr. Reed's prior convictions and violations, we find that § 922(g)(1), as applied to Mr. Reed, comports with our nation's history and tradition of disarming those found to pose a credible threat to public safety and/or the physical safety of others. *See Rahimi*, 602 U.S. at 698–99; *Gay*, 98 F.4th at 846–47 (rejecting as-applied

11

challenge to § 922(g)(1) where defendant had "been convicted of 22 felonies, including aggravated battery of a peace officer and possessing a weapon while in prison"); *e.g.*, dkt. 83 at 1 (Mr. Reed agreeing with the Government that he "could easily be seen" as a dangerous or threatening individual). Mr. Reed's as-applied challenge to § 922(g)(1) therefore fails, and his motion to dismiss the Indictment shall be **denied** accordingly.

## CONCLUSION

For these reasons, the Court hereby **DENIES** Mr. Reed's Motion to Dismiss. Dkt. 79.

IT IS SO ORDERED.

Date: 11/13/2025

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Barry D. Glickman
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
barry.glickman@usdoj.gov

Richard Mark Inman
ATTORNEY AT LAW
markinman13@aol.com